HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER T. AUSTIN,

    Plaintiff,

  v.

CITY OF KENT, et al.

    Defendants.

CASE NO. C14-1539RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendants City of Kent, Lyndon Baron ("Officer Baron"), Doug Westcott ("Officer Westcott"), and Andrew Kelso's ("Sergeant Kelso") Motion for Summary Judgment. Dkt. # 24. Plaintiff has not filed an opposition. As set forth below, the Court **GRANTS** Defendants' Motion and **DISMISSES** this Action **with prejudice**.

## II. BACKGROUND

Generally, Plaintiff alleges that on November 9, 2013, while he was working at the Crossland Economy Studios in Kent, Washington, he was approached by the defendant officers "as a high risk felony suspect, with guns drawn, and effectively placed Plaintiff Austin under arrest." *See* Am. Compl. ¶ 3.4. This encounter took place near the motel's dumpsters when the officers responded to a warrant service call for another individual, Adrian Parish. *Id.* ¶¶ 3.1, 3.3. Mr. Parish is shorter, lighter, and younger than Plaintiff. *Id.* ¶ 3.3. Plaintiff worked at the motel and was wearing its uniform. *Id.* ¶ 3.2.

ORDER – 1

1    In the fall of 2013, Detective Richard Gilcrist learned from various sources that Mr. Parish "was probably involved in trafficking of illegal narcotics and stolen guns." Dkt. # 26 ("Gilcrist Decl.") ¶ 7.  He later learned that his confidential informant, CI #12-25 ("CI"), knew Mr. Parish.  *Id.*  On November 9, 2013, CI called Detective Gilcrist and said that Mr. Parish had left CI's motel room at the "Crossland Motel" to steal a gun in a room near the motel's laundry room.  *Id.* ¶ 10.  Detective Gilcrist knew that Mr. Parish was wanted on multiple warrants so he called Sergeant Kelso, who was on duty in the area of the motel.  *Id.* ¶¶ 12-13.  Detective Gilcrist explained that Mr. Parish may be near the laundry room on the north side of the motel and that he may be armed.  *Id.* ¶ 13.  Detective Gilcrist described Mr. Parish as an adult, African-American male, of medium height and build and suggested that Mr. Parish be arrested on one of his warrants.  *Id.*  Detective Gilcrist also relayed the color of Mr. Parish's clothing and a description of Mr. Parish's hair.  *Id.*  Sergeant Kelso relayed this information to two patrol officers who were on duty with him, Officers Westcott and Baron. Dkt. # 29 ("Kelso Decl.") ¶ 8.  He asked both officers to meet him at the motel.  *Id.*  Each of these officers was familiar with the Crossland Motel due to their past experience and knew where the motel's laundry room was.  *Id.* ¶ 4; Dkt. # 27 ("Baron Decl.") ¶ 3; Dkt. # 28 ("Westcott Decl.") ¶ 2.

Officer Baron entered the motel's parking lot from the northwest entrance and saw only one person, Plaintiff.  Baron Decl. ¶ 6.  Plaintiff looked in Officer Baron's direction and began walking toward a nearby dumpster.  *Id.* ¶ 7.  Plaintiff was standing near the laundry room and appeared to fit the description of Mr. Parish.  *Id.* ¶ 8.  Officer Baron decided to stop Plaintiff because Plaintiff was near where the burglary was supposed to be occurring, his behavior was suspicious, and it was urgent to catch Mr. Parish.  *Id.*

Officer Baron radioed Sergeant Kelso and Officer Westcott that he had a possible suspect, grabbed his patrol rifle, exited his vehicle, and commanded Plaintiff to stop and raise his hands.  *Id.* ¶ 9.  Plaintiff turned toward Officer Baron and began yelling at him. *Id.* ¶ 10; Dkt. # 25 ("Grindeland Decl.") Ex. A [Austin Depo. Tr.] 12:18-25.  When

ORDER – 2

Sergeant Kelso arrived, he saw that Officer Baron had stopped Plaintiff. Kelso Decl. ¶ 12. Sergeant Kelso also thought that Plaintiff fit Mr. Parish's description. *Id.* Sergeant Kelso drew his service pistol and commanded Plaintiff to stop moving and to keep his hands up. *Id.* ¶ 15. Both Officer Baron and Sergeant Kelso approached Plaintiff with their guns drawn and in "low ready," aimed downward at a 45 degree angle, though they may have raised them at some point. *Id.* ¶ 13; Baron Decl. ¶ 12. Plaintiff continued to yell at the officers and to gesture with and wave his hands. *Id.* ¶ 15.

When the officers realized that Plaintiff was not Mr. Parish, they apologized, explained that they had mistaken him for someone else, and that he was free to go. Kelso Decl. ¶ 16; Baron Decl. ¶ 13. The officers estimate that their encounter with Plaintiff did not last more than a few minutes. *Id.* ¶¶ 18, 24; Baron Decl. ¶ 14; *see also* Westcott Decl. ¶ 12. Plaintiff was not ordered to the ground and was not handcuffed. *Id.* ¶ 19; Baron Decl. ¶ 14; Grindeland Decl. Ex. A [Austin Depo. Tr.] 74:3-7 ("Q. Did he ever touch you at all? A. No. He didn't touch me, period. He just seen my name tag and that was it. Q. Did any of the officers touch you? A. No."). The officers also encountered and briefly stopped another individual, but released him after they determined he was not Mr. Parish. *See* Westcott Decl. ¶¶ 9-10; Baron Decl. ¶ 15; Kelso Decl. ¶ 20.

The officers looked around the motel after their encounter with Plaintiff but did not find Mr. Parish or any indication that any rooms had been broken into. *See* Baron Decl. ¶ 16; Kelso Decl. ¶ 21. Sergeant Kelso and Officer Westcott soon left the motel, but Officer Baron remained nearby. *See* Baron Decl. ¶ 16; Westcott Decl. ¶ 13; Kelso Decl. ¶ 21. Roughly ten minutes later, Officer Baron spotted another person fitting the description of Mr. Parish, called Sergeant Kelso and Officer Westcott, and was able to arrest Mr. Parish. *Id.* ¶ 17; Westcott Decl. ¶ 13; Kelso Decl. ¶ 22.

### III.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

ORDER – 3

1  56(a).  The moving party bears the initial burden of demonstrating the absence of a
2  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
3  Where the moving party will have the burden of proof at trial, it must affirmatively
4  demonstrate that no reasonable trier of fact could find other than for the moving party.
5  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where
6  the nonmoving party will bear the burden of proof at trial, the moving party can prevail
7  merely by pointing out to the district court that there is an absence of evidence to support
8  the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets
9  the initial burden, the opposing party must set forth specific facts showing that there is a
10 genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*
11 *Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most
12 favorable to the nonmoving party and draw all reasonable inferences in that party's favor.
13 *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

14 Ordinarily, "[i]f a party fails to file papers in opposition to a motion, such failure
15 may be considered by the court as an admission that the motion has merit."  Local Rules
16 W.D. Wash. LCR 7(b)(2).  However, a district court may not grant an unopposed motion
17 for summary judgment solely because the opposing party has failed to file an opposition.
18 *See Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir.1994).

### IV.   ANALYSIS

a.   Plaintiff's Civil Rights Claims Under 42 U.S.C. § 1983

Plaintiff claims that the officers "used excessive force and threat of deadly force in violation of" Plaintiff's Fourth Amendment rights.  Am. Compl. ¶ 4.1.  Plaintiff also claims that Defendants violated his "Fourteenth Amendment rights with respect to equal protection of the law"[1] and "with respect to substantive due process."[2] *Id.*

---

[1] "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Plaintiff does neither here, nor does

ORDER – 4

A claim under 42 U.S.C. § 1983 "requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (*i.e.,* state action), and (2) the conduct must deprive the plaintiff of a constitutional right." *Ketchem v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

### i. Whether Reasonable Suspicion Existed

"The Fourth Amendment right to be secure from unreasonable searches and seizures by the government 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.'" *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). "A brief investigatory stop does not violate the Fourth Amendment, however, if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (internal quotation marks omitted); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In determining whether a stop was justified by reasonable suspicion, courts are directed to "consider whether, in light of the totality of the circumstances, the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *Cortez*, 449 U.S. at 417-18). "This process allows officers to draw on their own experience and specialized training to make inferences from

---

any evidence indicate such. Plaintiff was the only person standing near the laundry room when Officer Baron arrived. *See* Baron Decl. ¶ 6. Moreover, in the same time period Plaintiff was stopped, Officer Westcott similarly stopped and quickly released another individual who arrived at the motel who fit the description of Mr. Parish. *See* Westcott Decl. ¶¶ 9-10. Accordingly, the Court grants summary judgment for Defendants on Plaintiff's Equal Protection claim.

[2] Furthermore, the Court grants summary judgment for Defendants on Plaintiff's substantive due process claim as the investigative stop is more properly analyzed under the Fourth Amendment's reasonableness standard. *Graham*, 490 U.S. at 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

ORDER – 5

and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arizu*, 534 U.S. 266, 273 (2002) (quoting *Sokolow*, 490 U.S. at 418).

The Court finds that Defendants had a reasonable suspicion to stop Plaintiff.

First, Defendants acted on a reliable tip from a confidential informant. *See United States v. Palos-Marquez*, 591 F.3d 1272, 1275 (9th Cir. 2010) ("An officer may justify an investigatory stop based solely or substantially on an informant's tip, depending on its reliability."). Detective Gilcrist personally knew CI. Gilcrist Decl. ¶ 6. Detective Gilcrist had worked with CI for over a year, during which CI had provided numerous tips about criminal activity and suspects and assisted in making more than a dozen controlled purchases of illegal narcotics. *Id.* In fact, the informant called Detective Gilcrist at some risk to himself. *See id.* ¶ 10.

Second, Plaintiff generally matched the description of Mr. Parish. *See* Gilcrist Decl. ¶ 13; Baron Decl. ¶ 8d; Westcott Decl. ¶¶ 4, 8-9; Kelso Decl. ¶¶ 5, 8, 10, 12. Reasonable suspicion may exist to stop individuals who match a reported description or acts in a manner consistent with reported criminal activity. *See Alexander v. Cnty. of Los Angeles*, 64 F.3d 1315, 1319-20 (9th Cir. 1995) (finding that officers acted with reasonable suspicion in making stop of plaintiffs' vehicle where vehicle was similar to that reported by witnesses and one individual matched the physical description of suspect). And Plaintiff was in the same area where the confidential informant stated Mr. Parish would be. Baron Decl. ¶¶ 3, 6; *see United States v. Mayo*, 394 F.3d 1271, 1275 (9th Cir. 2005) (finding that officers had reasonable suspicion to stop individual where they responded to call about suspicious narcotics activity and suspect was in vicinity of reported crime and was standing next to vehicle associated with suspicious activity).

Moreover, Plaintiff immediately reacted to seeing Officer Baron's approaching patrol car by quickly walking away and toward the motel dumpsters, even though Plaintiff was not carrying anything. *See* Baron Decl. ¶ 7. Although walking away from

ORDER – 6

an officer does not, *ipso facto*, create reasonable suspicion (*see Morgan v. Woessner*, 997 F.2d 1244, 1254 (9th Cir. 1993)), doing so, coupled with other facts tying the individual to a crime, may serve to justify an investigatory stop (*see Paine v. City of Lompoc*, 160 F.3d 562, 566 (9th Cir. 1998)).  This is even more compelling as Officer Baron reasonably suspected – based on his experience – that Plaintiff may have been trying to dispose of a stolen gun.  *See* Baron Decl. ¶ 7; *see also* Dkt. # 30 ("Engman Decl.") ¶ 25.

          ii.   <u>Whether Defendants' Use of Force During the Stop Was Reasonable</u>

The right to make an arrest or an investigative stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  Determining whether force was objectively reasonable requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  The reasonableness of any given use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*  Factors for evaluating reasonableness include, but are not limited to, "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

The Court finds that the Defendants' use of force in this case was reasonable.  Although pointing a gun at a suspect may constitute excessive force in some instances (*see Robinson v. Solano Cnty.*, 278 F.3d 1007, 1010 (9th Cir. 2002)), this is not such a case.  The officers here were responding to a reliable tip from a confidential informant that a severe crime was going to occur.  The officers could reasonably have expected Mr. Parish to have been armed – the officers were informed that Mr. Parish often carried a firearm and was in the process of stealing one.  *See* Gilcrist Decl. ¶ 10.  Additionally, Plaintiff was not entirely compliant with the officers' commands – he yelled and gestured

ORDER – 7

at the officers. *See* Baron Decl. ¶¶ 10, 12-13; Kelso Decl. ¶ 15; *see also* Grindeland Decl. Ex. A [Austin Depo. Tr.] 92:18-93:2.

In contrast, the amount of force used was not significant. Even viewing all the evidence in favor of Plaintiff, the officers at most pointed their guns at Plaintiff until they could calm him down and determine he was not Mr. Parish. *See* Baron Decl. ¶ 14; Kelso Decl. ¶¶ 17-18. The incident lasted no more than a few minutes. *Id.* ¶ 14; Kelso Decl. ¶¶ 18, 24; *see also* Westcott Decl. ¶ 12. And the officers at most patted Plaintiff down to ensure he was not armed but never ordered him to the ground or handcuffed him. *Id.*; Kelso Decl. ¶ 19; *see also* Grindeland Decl. Ex. A [Austin Depo. Tr.] 74:3-7 ("Q. Did he ever touch you at all? A. No. He didn't touch me, period. He just seen my name tag and that was it. Q. Did any of the officers touch you? A. No.").

As such, the Court finds that Defendants' use of force was objectively reasonable. Numerous other courts have found that officers' use of similar force in similar situations has been justified. *See e.g., Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1257 (E.D. Wash. 2013) (finding officers did not use excessive force they entered home without knowing whether occupants were armed and pointed weapons at plaintiffs for only the period of time it took to ascertain that plaintiffs were unarmed, compliant, and posed no risk); *Johnson v. City of Bellevue*, No. C05-1070C, 2006 WL 223797, at *4 (W.D. Wash. Jan. 30, 2006) (finding officers' drawing of weapons did not constitute excessive force in part because plaintiff's pauses before complying with officers' requests was reasonably construed as resistance).

As such, the Court grants summary judgment for Defendants on Plaintiff's excessive force claim.[3]

---

[3] Because the Court finds that Plaintiff's constitutional rights were not deprived as a result of the officers' conduct, the Court need not address the Defendants' alternative claim of qualified immunity.

ORDER – 8

b. Plaintiff's State Law Claims

Finally, Plaintiff also alleges state law claims for assault and false arrest. *See* Am. Compl. ¶¶ 4.2-4.3. The Court grants summary judgment in favor of Defendants on Plaintiff's state law claims.

"The gist of an action for false arrest or false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority." *Hennick v. Bowling*, 115 F. Supp. 2d 1204, 1210 (W.D. Wash. 2000) (quoting *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983)). Where an officer acts with probable cause or reasonable suspicion in detaining an individual, then a claim for false arrest necessarily fails. *See id.*; *see also Hanson v. City of Snohomish*, 852 P.2d 295, 301 (Wash. 1993).

An assault is any act that causes a person apprehension that harmful or offensive contact is imminent. *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (Wash. Ct. App. 2000). Where an officer's use of force is reasonable, however, an assault claim is precluded. *Goldsmith v. Snohomish Cnty.*, 558 F. Supp. 2d 1140, 1156 (W.D. Wash. 2008) (citing *McKinney*, 13 P.3d at 641). Because the officers' use of force was reasonable, Plaintiff's assault claim fails.[4]

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment on all claims and **DISMISSES** this case **with prejudice**. The Clerk shall terminate this Action and enter judgment for Defendants.

DATED this 2nd day of September, 2015.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[4] Because the Court finds that Plaintiff's state law claims fail as a matter of law, the Court need not address the Defendants' alternative defense of qualified immunity under Washington law.

ORDER – 9